on behalf of Mr. Granadeno we would like to proceed with arguing issue number four in our brief in this particular case we had several jury notes during the deliberation the court informed us of the first two but the third note that the jury sent out was we were not informed of the jury note and were not given an opportunity to respond to what the jury had requested in the record on appeal the first jury note was referenced in record on appeal 104 and the court called us in asked us if we wanted to respond the only thing the jury asked in that occasion was whether they wanted to come back the next day for more time and the judge asked us what do you think I'm going to respond for them to come tomorrow we said fine that's okay on the second day the note came back they were requesting permission to review some evidence with a DVD player again the court called us in and asked us that she wanted to bring the jury back into the courtroom and allow them to hear the evidence that they wanted to hear and they proceeded to do that that's referenced in record on appeal 106 with regards to jury note number three which is referenced on record on appeal 107 the jury sent a note to the court and said 11 of the 12 jurors have agreed one juror is undecided do we need a unanimous vote in this particular case the court did not inform us of the jury question and did not call us into the courtroom to give us our but isn't the jury told several times through the instructions that they're given before they deliberate that they need to be unanimous I mean so is there something new to the idea that they need to be unanimous that they were instructed in jury instruction number 15 of the jury charge that they needed to be unanimous that's reflected in record on appeal 102 to 103 but the problem was that by the court not allowing us to come in to give our objection or a request it was apparent to me reading this record that the jury was deadlocked and that if in fact we would have been told by the court that this note had come out we could have requested a mistrial or we could have requested the court to re-instruct the jury with regards to instruction number 15 this case is similar to the . . . the jury's instructed that has to be a unanimous verdict it's not just once it's three times so this can't be surprising to them the unanimous vote would be appropriate and you're saying that they're deadlocked it just says one juror is undecided it doesn't say one juror is going the other way it's just that that person hasn't made up their mind yet so isn't it a little premature to say we need to mistrial their deadlock that doesn't seem very reasonable they haven't been deliberating that maybe four hours and then you're talking about they should have been told not to give up their honest convictions that's like an allen torch you wouldn't do this until later in the day I mean not four hours it seems inappropriate well like in the case that we cited in our brief a racino versus let that's a united states supreme court case the 2010 in that case the jury sent out a note to the court to and asked the told the court that they what happens if we can't agree on a verdict the judge asked counsel to brought them into the courtroom and asked them what would you like to do I'm going to call the jury in and I'm going to ask them if they're deadlocked and if they can proceed with the deliberations and so in that case after the court brought him into the to the courtroom to ask them if they were deadlocked because the question wasn't clear the court declared a mistrial and that was also similar in nature to a short trial in this case even though the note was unclear we couldn't ask or they couldn't be brought in to be asked whether they were deadlocked at the time so we were prevented from arguing that that point to the court well what would you have suggested that the court respond to the note if the judge would have asked us to bring I would have asked for the jury to be brought into the courtroom and asked if they had if they were deadlocked if they would have said yes I would have asked for a mistrial which is this is a classic point where you can ask for a mistrial unfortunately we don't know the judge would have granted a mistrial because we were never told about the jury instruction and we never found out about the jury instruction so how are we supposed to weigh all of this and decide whether it was harmful error I mean I think it was probably error not to consult y'all so let's just spot you that argument how do we assess whether it's harmless or not since we don't know whether they were deadlocked at that point etc etc I think they were I think it's harmless to my client because we were prevented it's harmless it's harmful harmful I'm sorry to my client because we were prevented the opportunity to do the very procedure that had been done in the racino right but procedure you know sometimes procedure for its own sake is is reversible error but not typically so what I'm trying to say is do you have any information to show that something would have happened differently you know like judge Cronin is saying typically you wouldn't grant a mistrial after only four hours of deliberation that kind of thing well I think this case is unique because we started the jury at two o'clock on one day and finished at 11 a.m. the next day it was a very short trial they had been deliberating for four hours I believe shortly after the judge told them that they needed to be unanimous they came back with a guilty verdict okay what time was that because I saw the time that they were all released that the lawyers released was about 130 I didn't see what time the the jury actually came back the jury note number three came came in at 1145 the judge responded at 1152 the jury came back with a guilty verdict as at 136 where was where were counsel at the time that this second note third note came in reading the record judge the court gave us permission to be away from the courtroom subject to being called by cell phone to come in upon request which once we were notified that the jury had a verdict the court called us to come into the to the courtroom I was across the street in a state court case arguing a motion and so we advised the court we gave the court our cell phones and the court told us that they would call us whenever they needed us to come back into the courtroom that's where I was and were you consulted by cell phone for the other two notes no on on the first the first note we were ordered to stay at the courtroom because it was already 445 this the second note we were called because it was that I believe it was at 930 in the morning we were told not to be there until the judge called us we were excused basically and so the second note we were advised and then the third note we were we weren't advised and it was not referenced in the transcript like the other two notes were so that that was the information how did you find the record on appeal to prepare this brief I saw that the docket sheet contained this jury note you didn't know it till the appeal yes I did not know it to the appeal we did not know about the jury note until I reviewed the docket sheet and going over the record excerpts to determine that in fact a third note had been been asked for the the other issue was that if in fact the jury would have been brought into the courtroom and the court would have asked him if they were deadlocked we could have requested the mistrial and if the judge would have said no we could have requested the judge reread jury instruction number 15 I acknowledged that they had already been told but it was obvious that they hadn't read the instructions carefully because they were asking about you net unanimity so soon after they had been instructed which was just a day before it at 445 they were finished being instructed and this note came out 1145 a.m. and this is after the second note which they had already reviewed the evidence that they wanted to see which was a video so you feel like there's a difference between answering the question do we need to be unanimous with the answer yes there's a difference between that and instruction number 15 no you're saying the right thing to do it couldn't be wrong in my view for the judge to read them an instruction they've already received and in fact typically that's what you say you say please consider the instructions you've already received or something like that because it's already covered so if if juror instruction number if it would be proper to reread your instruction number 15 what's the difference between what instruction number 15 well let's let me go back I would have asked for a mistrial first and if the mistrial would have been denied I would have asked the judge to reread juror number instruction or 15 and you are correct the court would probably have said I'm not going to reread 15 but I'll instruct him to reread the instructions but I wasn't given that opportunity to do even that that was important to my client because that in particular instruction it would have been told them to go back to read on that they could have read that they were not to give up their personal convictions about where they stood and in this place the jury told the court that they were 11 to 1 they didn't say which way but they were 11 to 1 well 11 to 1 it was really more like 11 were decided and one was undecided it's not 11 to 1 you know guilty or not guilty and then like the cited in the Racino case this is a Fifth Circuit case they also said that the third option when the jury is hung is that there's a mistrial granted in this case the court did not allow them to have that opportunity because it simply told them yes you need to come back with a with a unanimous verdict okay let me since you're starting to run out of time let me ask you about the sentencing issue on the endangerment we know from Solis Garcia that simply being somewhere where you either aren't seat belted or don't have seat belts isn't enough but isn't every other case besides Solis Garcia in other words pretty much everything beyond that has been found sufficient at least under you know clearly erroneous and all that fairly deferential review standard to be endangerment yes in this case judge I'd like to start off by what the sentencing hearing this is referenced in my brief when the government was asked about their position in response to my objections the government said we are claiming that there's this reckless endangerment because of where the four aliens were transported which was the storage area of the of the sleeper bed they said the aliens could have gotten out there has to be less less oxygen there there were no extreme temperatures they could communicate with the driver and she said but there's an extreme danger in putting four people under a bed and closing it up we argued that based on the testimony by the two material witnesses who were the only witnesses who were called that were actually in the truck both of them said that the compartment was closed when they arrived at the checkpoint one of the aliens who was hiding on top of a storage compartment got off and and he closed the the compartment right before they got to the checkpoint both witnesses testified to that and then they said one of the witnesses his name was Garcia Morales testified he says but you can unlock it from the inside and in fact agent stamper what about the guy who's in the cubby I mean I understand the issue with the guys below that they were only briefly kind of in that closed area and that they could get out and so forth but what about the guy in the cubby if you break suddenly and he's gonna go flying isn't he that's that particular fact pattern is is similar to to the case where the I think it was Solis Garcia where the aliens were in the back of a van and they were just lying down and they argued at the trial that it was reckless endangerment because they could have just flown out but the Fifth Circuit said that's not enough there has to be other aggravating circumstances for example boxes or luggage or tires that can that can hit somebody when they're being transported if an accident would have taken place the facts of compartment excuse me it was in an overhead compartment over the driver's seat it's my understanding it was an overhead compartment not a compartment like lying on on the ground or on the floor of the van yes ma'am it was overhead compartment with a closet out well the closet was there somebody was in the closet and somebody was in this overhead bin yes without a closure it's not like an airplane bin there wasn't a door on it yes maybe some nutty but couldn't that person have just flown out well that beer with the sudden breaking occurred and they're on an interstate highway the answer is yes they could have but it's very similar to the case where the four people are lying in the back of a van and they argued that that was reckless endangerment and this court found that the floor is different from the ceiling I mean in other words if if there's a sudden breaking and I'm already on the floor I'm not gonna go flying and thwack onto the is at least six seven eight feet they're gonna land they're gonna go flying from that and go thwack that seems more dangerous or at least arguably deferentially more dangerous there was one issue the there was a cargo net that you could see in the photograph holding that that was there that would have prevented the person from simply steep you know falling out and the compartment if you look at the photograph is not plain it has a small area where you put stuff into it like like a cupboard and so it's not easy for them to slide out and none of the witness testified that there was any activity or transportation that endangered anybody thank you thank you very much you have may please the court there are a few things I want to clarify in relation to the jury note first in my brief I said that there was nothing in the record about jury note one that's partially correct the problem is the jury note was labeled jury note number eight so that's where my confusion came from so I want to clarify that but certainly he mr. Vela is correct that the district court did counsel them about the jury's note about wanting to go home in relation to the timing between the jury note three the one that were that's at issue here seven minutes elapsed based on the stamp or excuse me the handwritten notations on that jury note I don't know if the judge tried to contact them or not there's nothing about that in the record the other thing is I want to clarify that on day one of the trial the jury was selected and witness testimony did begin on day two they concluded the testimony and they finished up with closing arguments in the reading of the charge let's say you know for 430 it was a full day in other words and then in day three they came back to deliberate so I just wanted that to be clear and the government's position of course is that there was the one word answer to the simple jury question was harmless it was completely devoid of prejudice as okay so it's error but harmless error in your view I believe that the law is very clear that that lawyers are supposed to be consulted when a jury note comes out however having said that I believe this was as plain vanilla of a jury note as you can get I believe your honor is correct that frequently a district court judge or a state court judge will refer to the say refer to the instructions what-have-you but even in those cases the lawyers are typically present there's no question that that did not occur here and based on Mr. Vaila's representations before this court the government will agree that plain error does not apply because he never had the jury note the jury did not tip its hand either way it did not make any indication about what the evidence was about whether or not 11 were leaning one way one was leaning another way in relation to guilt and the judge's answer comported with the instructions that had previously given if it's sort of weird because if they were instructed three times just the day before they need to be unanimous now they seem to be confused about that that seems to be a time when you really probably should bring counsel in on that I mean this isn't something like where's the bathroom or something very routine this is you know we're confused about something that we the lawyers think is very clear because he's Judge Crone pointed out three times they say you have to be unanimous and yet somehow that didn't get conveyed because they're asking that why are they asking the question if it's so clear but we don't know that the jury unanimously was confused it could have been one person wanted to make sure but see one person's enough to hang a jury well I understand that but I'm saying behind the question that could have been one person could have been behind that could also be the one undecided guy who's then told well it has to be coerced by that answer except they didn't agree right away there's still some time before the verdict came back we know anything about lunch in this well no and it looks what's very strange it looks like this occurred during a recess so I don't know if lunch was brought in mr. Bailey could speak better to that because of course he was in the trial court he was over across the street making an argument so he didn't know if they got lunch or not no but I'm just saying he might know that but I have I have no clue but we don't know how to weigh that hour and a half or typically lunches is involved as to whether that was an hour and a half of solid deliberations or an hour and a half interrupted by lunch or whatever that's correct except this this particular case is far removed from this court's decision in Jones which I cited in my brief where the court this court determined it was harmless where the district court responded to jury notes asking about a particular piece of evidence the court the jury described its troubles reaching a verdict and wanted to talk to the judge about a certain juror then the district court also went ahead and asked the jury how long it wanted to work one evening and I believe that this case is just far far removed from that didn't he go in and stare them all down at some point as well and Jones I don't recall that your honor but but this little one question I believe doesn't as I said doesn't would never have provoked an Allen charge it's not as though we are deadlocked and the case is out there along those lines it's just do we have to be unanimous I agree the jury might have been sloppy or wasn't paying attention to whether it had to be unanimous or what have you but as I said before one juror could it be enough to have a jury note one juror could say we want confirmation from the court they also not obey another instruction like don't tell us how the jury's divided numerically even to I'm sorry there's another instruction that's given about don't tell anybody how the jury is divided numerically even to the court I didn't obey that instruction either well that by bringing by writing this note it seems like they're not obeying that instruction well yes but I think that that I think what what here is if the lawyers have been here everybody would have thought that that was some type of routine question from the jury the fact of the matter is another question I have do you contend that the defendant he didn't need to be there only the lawyers needed to be there I mean the defendant has the right to be there at every critical stage of the proceeding that's correct well so do you think that in the better situation that the defendant should have been there and the lawyers and then everybody was advised to this question certainly that would have been the most prudent thing to do there's no question about that as I said from the get-go that the lawyer should have been consulted about this and the record is completely there's nothing in the record to indicate why they were not and as mr. Vela said he didn't see it until he was he was looking at the record and I even checked with trial counsel who learned about it from mr. Vela so nobody apparently or neither one of the trial lawyers knew about it and in relation to the reckless endangerment I cited a host of cases on page 50 and through 52 of my brief the district court listened to testimony from three agents to material witnesses as well as defense witnesses and the district court found quote it was very clear that the four aliens in the locked tool compartment wouldn't be able to get out that they'd be in extreme danger if an accident occurred that their oxygen was compromised and they couldn't communicate with Granadino and also that the person in the overhead compartment was in a place that wasn't designed to carry a human being and that a sudden stop would cause the alien to fly out and based on the testimony at trial these the district court's findings are secured there was evidence that they were sort of secured right before the checkpoint for the purposes of the checkpoint what evidence was there who said they couldn't undo the latch or whatever and get out the third agent as stamp stamper I believe testified that one of the aliens needed to be helped out and look on page 456 I'm sorry needing to be helped out it's different from can't Mr. Perez also said that he would not have been wanted to be helped out but but that is in my brief I can't I can't quote I mean I can't exhibits number eight and seven are pretty graphic yes they are your honor look like anchovy and he testified that it was an ugly situation they also testified Morales and Perez that that they had let's see now there was the one in the overhead also had to be helped out GX excuse me government exhibit five and six shows them the four under the the bed which is also somewhat akin to a trunk if you will once it's closed down because there's no oxygen in this particular case if you look at them the heads and the heads are in opposite directions and one of I believe it was Perez that testified that it was ugly and the other thing was that the both the guidelines and this court have made it very very clear that this guideline applies to a rock wide variety of conduct ask you where was the truck bound for that the driver said that it was bound for El Campo which of course we know is south of Houston but the aliens testified they were going in different places so it was unclear where they were going to be dropped what where they thought they're going to be dropped in any event they'd have been in they've been in we that's correct because I doubt that the driver would have allowed them to put their heads up visibly through the cab of the truck that's correct and I don't there's nothing in the record indicating that they would pull over or anything like that to let the oxygen back in there and this court as I said before has upheld the upheld enhancements in similar circumstances also that what was also the district court also found that I believe noted also these compartments were also empty so when he categorically denied his knowledge what we know is that the overhead was empty the space above the refrigerator and the closet was also empty and unless this court has any other questions I'll yield the remainder of my time I just wanted to advise the court that on record on appeal 11 it's the docket sheet and that's the only thing we can see that the judge provided a meal to the jury an order was issued docket entry number 56 on 8 21 13 so it appears that the judge provided the jury with a meal on that particular day was that the day of this third note yes ma'am that's the day they worked through lunch to reach a verdict they worked through lunch probably with regards to the question we don't know whether they took a break to eat the lunch and stop talking about the case or whether they were eating the lunch and talking about the case at the same time I do not know that's not reflected in the in the in the docket sheet in the Jones case that was cited by both the defense and the government the second instance of the four communications that occurred the court sent out a note to the judge saying that they were having troubles having coming to a verdict as to a particular account and the court called in the attorneys into that particular case and then they returned that's when the judge stuck his head into the jury room looked around and he said they didn't need an answer anymore so that was sort of intimidated the jury to that's the inference to go forward and so also in the case of United States versus Peter judge Higginbottom was talking about a similar question and in that case the the foreperson told the judge that they were not going to be able to get a verdict on one on one count without telling them how they stood and that they felt pressure to agree that and one person agreed that it was tremendous and that one was not conferred to counsel and they found that that particular question was close enough to find error and then in the case of Racino versus Lett that's that question was just very simply what if we can't agree and the court found in that case that it was erroneous and they even asked the question they brought the jury back in and asked if they were deadlocked so I just wanted to point that out for the court to consider the similarities of those particular issues with regards to the reckless endangerment I want to point out that the case that I was referring to was the Solis versus Garcia and judge Haynes you are correct that in that case they were lying down in the back of the cargo area but I also wanted to point out that if you look at the picture where the aliens hiding in the compartment above the driver's seat there's a net and if in fact mr. Granadinho would have pressed the brakes he would have gone forward not back so by pressing the brakes that would not have you know you can swerve I mean there's a lot of things cars do that would cause somebody just kind of suspended up there I mean I don't know how big big the guy is relative to the net I don't know if the net can hold him or not I mean I was more concerned about the four fellows who were in that tool compartment for yes I would like to point out to the court that the two material witnesses who were kept were actually in the compartment and one of them says that they were going to close it once they got into the checkpoint and they said both of them testified that as they drove to the checkpoint the compartment was open so they weren't it wasn't closed and that the driver had instructed the person that was in the closet that once they crossed the checkpoint how to open it again well I can understand that but I also believe if you see the way they were wedged in there with heads and feet you know heads and feet smelling each other and then on top of each other you know the police had transported people like that and one of them had died because he couldn't breathe we'd be here on a 1983 suit so I just think it's a real very dangerous position in which to travel for several hours and I think that if they were had been transported for several hours it may well have risen to the effect of reckless endangerment they'd have gotten out the bottles of water and and the travel neck pillows because these poor fellows had paid extra right but but again both material witnesses testified that they were there were not hot they could they never said anything about that they couldn't breathe they didn't say they can get out and one of the witnesses Villanueva Perez stated that he could get out because there was other access panels to underneath the bed to go outside and so both material witnesses testified and the government itself said that the aliens would have gotten out there was no extreme temperatures they could communicate and that's what they acknowledged to the court thank you all right sir and you were court-appointed and doing this as a service to the court in the community and you did a very good job thank you very much thank you same to you